## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe,

    *Plaintiff*,

v.

(1) WADE FREE, in his official capacity as Director, Oklahoma Department of Wildlife Conservation, and

(2) RUSSELL COCHRAN, in his official capacity as special prosecutor appointed by the Governor,

    *Defendants*.

Case No. 26-cv-00003-JFJ

**COMPLAINT**

Plaintiff the Muscogee (Creek) Nation ("Nation"), a federally recognized tribal government, states as follows:

## INTRODUCTION

1. This action encompasses two claims. The first claim seeks declaratory and injunctive relief to protect the Nation's sovereign interests in regulating the hunting and fishing activities of its citizens within its Reservation free from regulation by the Oklahoma Department of Wildlife Conservation (ODWC) under the Direction of Defendant Free and from criminal prosecution by Defendant Cochran.

2. The second claim seeks declaratory and injunctive relief to vindicate the Nation's authority to regulate, free of interference by Defendants, the citizens of the Cherokee Nation, the Chickasaw Nation, the Choctaw Nation of Oklahoma, and the Seminole Nation of Oklahoma (collectively, "Five Tribe citizens") lawfully hunting and fishing within the Creek Reservation pursuant to the July 11, 2024 Five Tribe Wildlife Management Reciprocity Agreement ("Five Tribe Reciprocity Agreement"), Ex. 1.

3. The Creek Reservation is a federally protected Indian reservation and hence constitutes Indian country under federal law. *See McGirt v. Oklahoma*, 591 U.S. 894 (2020).

4. The Nation enjoys the authority to regulate hunting and fishing by Indians within its Reservation as an "aspect of tribal sovereignty[.]" *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 337 (1983).

5. That authority is exclusive of state authority absent an express conferral of state authority by Congress. *Id.* at 330 (within their Indian country, tribes "exercise[] exclusive jurisdiction over hunting and fishing by members of the Tribe"). Accordingly, with respect to the Nation's own citizens, where "the land remains in Indian Country status, [tribal members] are

not subject to state regulation" of hunting and fishing absent congressional assent. *United States v. Felter*, 752 F.2d 1505, 1510 (10th Cir. 1985); *see also, e.g.*, *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 669 (10th Cir. 1980) (holding that "state hunting and fishing laws do not apply, directly or indirectly, to hunting and fishing by [tribal] members" within Indian country absent congressional assent).

6. The Nation likewise enjoys exclusive authority, absent contrary indication by Congress, to regulate hunting and fishing within its Reservation by Five Tribe citizens engaged in such activity pursuant to the Five Tribe Reciprocity Agreement. As set forth below, the interests of the Nation and the United States in the Nation's exclusive regulation of those Indians are compelling, and the ODWC has no cognizable interest in exercising concurrent jurisdiction over them, rendering any authority it might claim preempted. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144–45 (1980).

7. Defendants' lack of jurisdiction to apply state hunting and fishing laws to Nation citizens and to Five Tribe citizens hunting and fishing under the Five Tribe Reciprocity Agreement goes hand in hand with their lack of jurisdiction to criminally prosecute Indians for alleged violations of those same state laws. *See McGirt*, 591 U.S. at 898, 929 (states "generally have no jurisdiction to try Indians for conduct committed in Indian country" absent "a clear expression of the intention of Congress" (quotation marks and citation omitted)); *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) (same).

8. The ODWC, under the direction of Defendant Free, has declared its open disregard of these bedrock rules of federal law. On October 9, 2025, it announced that "state fish and wildlife laws apply to everyone in Oklahoma" and that "ODWC game wardens will continue

2

to enforce the law and will issue citations to anyone in violation of the state's fish and game laws, regardless of tribal citizenship."[1]

9.  Pursuant to this policy, ODWC officials have threatened Nation citizens with prosecution for hunting and fishing within the Creek Reservation pursuant to Nation licensing and regulation, and a number of those citizens have acquiesced to those threats by submitting to state licensing and regulation. They have done so despite the fact that their hunting and fishing activities are lawful under Nation and federal law without compliance with ODWC requirements.

10. Under the Five Tribe Reciprocity Agreement, the Nation allows Five Tribe citizens to hunt and fish within the Creek Reservation in compliance with and subject to the terms of the Nation's Conservation Code and Conservation Regulations. All those hunters and fishers now do so under threat of citation and prosecution by Defendants.

11. Oklahoma Attorney General Gentner Drummond has informed Defendant Free that the ODWC's policy of applying state fish and game laws to Indians in Indian country "finds no support in Oklahoma law," Ex. 2, Letter from Drummond to Free (Nov. 6, 2025) at 3, violates tribes' "treaty-based rights to self-government free from state intrusion," *id.* at 4, and "directly contradicts well-established federal law recognizing tribal sovereignty over hunting and fishing by tribal members on reservation lands." Ex. 3, Letter from Drummond to Free (Nov. 13, 2025) at PDF p. 2.

---

[1] Press Release, ODWC, ODWC Reaffirms Enforcement of Oklahoma's Wildlife Laws (Oct. 9, 2025), https://www.wildlifedepartment.com/outdoor-news/odwc-reaffirms-enforcement-oklahomas-wildlife-laws.

12. Attorney General Drummond accordingly directed Defendant Free to rescind the policy and dismiss all pending actions against Indians for alleged hunting and fishing violations arising in Indian country. *Id*. at PDF p. 3.

13. Defendant Free has disregarded the Attorney General's repeated admonitions that the ODWC's actions under his direction violate governing law and impair tribal sovereignty, that the policy must be rescinded, and that pending actions must be dismissed.

14. On December 18, 2025, Attorney General Drummond issued a formal opinion, legally binding on both Defendants under Oklahoma law, that as a matter of federal law the State of Oklahoma lacks "authority to regulate hunting and fishing by Indians on their own reservations" and that "it is clear that the state does not have authority to enforce the [ODWC] Wildlife Code on a [tribal citizen] who seeks to harvest game on the land the federal government promised to his or her tribe," Op. Okla. Att'y Gen. No. 2025-19 (2025) (Ex. 4) at 3, and that "[f]ederal law preempts application of the Oklahoma Wildlife Code to … [Five Tribe citizens] hunting on a Nation's reservation pursuant to the Five Tribes Wildlife Management Reciprocity Agreement," *id*. at 10.

15. Defendant Free's continued application of state fish and game laws to Nation citizens and Five Tribe citizens lawfully hunting and fishing within the Creek Reservation, and Defendant Cochran's prosecution of such tribal citizens, constitute ongoing violations of federal law. Those actions subject Nation citizens and Five Tribe citizens to regulations and criminal penalties other than the laws and penalties maintained by the Nation, and thereby impermissibly interfere with and irreparably harm the Nation's sovereignty and federally protected rights of self-government.

## JURISDICTION AND VENUE

16. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362. The Nation maintains a government-to-government relationship with the United States and has a governing body duly recognized by the United States Department of the Interior. The Nation asserts claims arising under the principles of federal Indian law governing federal, tribal, and state authority within Indian country.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the actions or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## PLAINTIFF

18. The Nation is a federally recognized Indian tribe whose governing body is recognized by the United States Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 99,899-01, 99,901 (Dec. 11, 2024). The Nation exercises sovereign powers of self-governance and jurisdiction over the Creek Reservation, which was guaranteed to the Nation and defined by Congress in the Treaty with the Creeks, Mar. 24, 1832, 7 Stat. 366; Treaty with the Creeks, Feb. 14, 1833, 7 Stat. 417; Treaty with Creeks and Seminoles, Aug. 7, 1856, 11 Stat. 699; and Treaty with the Creeks, June 14, 1866, 14 Stat. 785. *See McGirt*, 591 U.S. at 899–902.

19. The Nation has enacted and enforces within its Reservation a comprehensive Conservation Code and Conservation Regulations, which provide for tribal control and regulation over "hunting, fishing, trapping, gathering and outdoor recreation" within the

Reservation for the purpose of "conservation, enhancement, protection and management of the Nation's fish, wildlife, and plant populations[.]" 23 MCNCA § 2-103(A)–(B).[2]

20. The Nation's code and regulations are enforced through its Division of Agriculture and Natural Resources, game rangers, peace officers, and tribal court system in cooperation with federal authorities as a well as state, county, and local agencies. *See, e.g.*, 23 MCNCA §§ 2-201, 2-202, 4-401, 4-402, 4-407; MCN Conservation Regs. §§ 5-42, 5-43.[3]

21. To ensure consistent and seamless natural resource management and conservation, the Nation's wildlife regulatory scheme substantively mirrors that of the ODWC on a provision-by-provision basis. *Compare* MCN Conservation Regs. chs. 1–3, *with* Okla. Admin. Code tit. 800, chs. 1, 10, 25.

22. The Nation is also signatory to the Five Tribe Reciprocity Agreement. Under that Agreement, the citizens of all five signatory tribes have consented to the civil and criminal jurisdiction and fish and game laws of the other signatory tribes if they choose to hunt or fish within the reservation of one of those tribes. *See* Ex. 1 art. 2(B), (F)–(H).

**DEFENDANTS**

23. Defendant Wade Free is the Director of the ODWC and is responsible for the administration and enforcement of Oklahoma's fish and game laws. *See* Okla. Stat. tit. 29, § 3-105(A)(6). Pursuant to his state law authority, Defendant Free has directed those under his supervision or direction to enforce state fish and game laws and impose criminal penalties against Nation citizens and Five Tribe citizens lawfully hunting and fishing on the Creek

---

[2] The Conservation Code is available at https://law.muscogeenation.com/mvskokelaw/title-23/title-23-chapter-2-conservation-code.
[3] The Conservation Regulations are available at https://www.muscogeenation.com/wp-content/uploads/2025/11/Final-25-26-Conservation-Regulations.pdf.

6

Reservation. As such, Defendant Free is engaged in the ongoing violation of federal law. He is sued in his official capacity.

24.     Defendant Cochran is a special prosecutor appointed by Oklahoma Governor Kevin J. Stitt to pursue state-issued citations and criminal misdemeanor charges against Nation citizens and Five Tribe citizens hunting and fishing within the Creek Reservation for violations of state fish and game laws. As special prosecutor, Defendant Cochran claims authority to "prosecute offenses against the law of the state," Okla. Stat. tit. 74, § 6. Under color of this authority, he receives investigation and citation referrals from ODWC game wardens regarding tribal citizens hunting and fishing within Indian country in Oklahoma and initiates proceedings against them for alleged violations of state fish and game laws.[4] As such, Defendant Cochran is engaged in the ongoing violation of federal law. He is sued in his official capacity.

## STANDING

25.     Defendant Free's directive that the ODWC apply state fish and game laws to Nation citizens and Five Tribe citizens who are hunting and fishing within the Creek Reservation in compliance with Nation law is causing irreparable injury to the Nation and its citizens by interfering with the Nation's sovereignty and rights of self-government and undermining the authority of its own civil regulatory and criminal justice systems, including the authority of its conservation officers and tribal courts to enforce the Nation's hunting and fishing laws free of state regulation. *See Ute Indian Tribe*, 790 F.3d at 1005–06 (stating that state and county

---

[4] *See* Derrick James, *Stitt Reloads in Jurisdiction Fight, Appoints Special Prosecutor for Tribal Hunting Cases*, NonDoc (Nov. 15, 2025), https://nondoc.com/2025/11/15/stitt-reloads-in-jurisdiction-fight-appoints-special-prosecutor-for-tribal-hunting-cases/; Graycen Wheeler, Robby Korth, Sarah Liese (Twilla), *Stitt Appoints Special Prosecutor for Indigenous Oklahoma Hunters Without State Licenses*, KOSU (Nov. 13, 2025), https://www.kosu.org/news/2025-11-13/stitt-appoints-special-prosecutor-for-indigenous-oklahoma-hunters-without-state-licenses.

prosecution of an Indian within a tribe's Indian country absent the assent of Congress is an "infringement on tribal sovereignty" and causes "irreparable injury" to the tribe (citation omitted)); *see also, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001) (holding that unauthorized assertion of state jurisdiction over Indians within tribe's Indian country is an "infringement on tribal self-government" and that the "[p]rotection of that right is the foundation of federal Indian law; accordingly, … the tribe has standing").

26. Defendants' persistence in applying state fish and game laws to Nation citizens and Five Tribe citizens lawfully hunting and fishing within the Creek Reservation despite the binding conclusion of the Oklahoma Attorney General that such actions are unlawful demonstrates that, absent judicial intervention, Defendants will persist with their unlawful conduct.

27. This Court can redress the injury to the Nation's sovereignty and right of self-government by issuing a declaratory judgment that the ODWC, under the direction of Defendant Free, and Defendant Cochran lack regulatory and criminal jurisdiction over hunting and fishing by Nation citizens and Five Tribe citizens within the Creek Reservation, and by enjoining Defendants from exercising, or directing others to exercise, such jurisdiction.

**REGULATORY AUTHORITY OVER HUNTING AND FISHING BY NATION CITIZENS WITHIN THE CREEK RESERVATION**

28. The Creek Reservation is a federally protected Indian reservation and Indian country under 18 U.S.C. § 1151(a). *See McGirt*, 591 U.S. at 899–913.

29. Hunting and fishing on the Creek Reservation play an essential fundamental role in tribal culture and subsistence. Creek citizens rely on fish and game for food throughout the year, hunting and fishing are the means by which traditional knowledge is passed between generations, and animal hides and parts are used for clothing and ceremonies. The Nation has

developed several programs to further these cultural practices and opportunities, including for youth, veterans, and elders. *See* Decl. of Sec'y of Interior Affs. Trenton Kissee ¶¶ 17–25; Decl. of Jordan Pettigrew ¶¶ 9, 11–12; Decl. of Trey Downum ¶¶ 3–5, 7–8.

30.  As a matter of federal law, "[t]he right to hunt and fish on reservation land is a long-established tribal right[.]" *United States v. Fox*, 573 F.3d 1050, 1054 (10th Cir. 2009) (brackets in original) (quoting *Felter*, 752 F.2d at 1509).

31.  The authority to regulate Indian hunting and fishing within the Creek Reservation is a core aspect of the Nation's inherent and federally protected right of self-government. The Nation exercises that authority as an "aspect of tribal sovereignty," and its hunting and fishing regulations exist under "the protection of" and carry "the force of federal law," *Mescalero*, 462 U.S. at 337–38.

32.  Because tribes enjoy "treaty rights to hunt and fish on lands reserved to them," the Nation's regulation of Indian hunting and fishing by Creek citizens within its Reservation is exclusive of regulation by non-tribal governments "unless such rights were clearly relinquished by treaty or have been modified by Congress," *United States v. Dion*, 476 U.S. 734, 738 (1986).

33.  Absent such relinquishment or modification, where "the land remains in Indian Country status, [tribal citizens] are not subject to state regulation" of hunting and fishing. *Felter*, 752 F.2d at 1510; *see also, e.g.*, *Cheyenne-Arapaho Tribes*, 618 F.2d at 669 (holding that "state hunting and fishing laws do not apply, directly or indirectly, to hunting and fishing by [tribal] members" within Indian country); *Mescalero*, 462 U.S. at 330 (stating that within their Indian country, tribes "exercise[] exclusive jurisdiction [vis-à-vis states] over hunting and fishing by members of the Tribe").

34. Nor under any circumstances are Nation citizens subject to state prosecution for any alleged violation of state fish and game laws. *See McGirt*, 591 U.S. at 898, 929 (stating that states "generally have no jurisdiction to try Indians for conduct committed in Indian country" absent "a clear expression of the intention of Congress" (quotation marks and citation omitted)); *Ute Indian Tribe*, 790 F.3d at 1004 ("[U]nless Congress provides an exception to the rule … states possess no authority to prosecute Indians for offenses in Indian country." (quotation marks omitted)).

**REGULATORY AUTHORITY OVER INDIAN HUNTING AND FISHING WITHIN THE CREEK RESERVATION UNDER THE FIVE TRIBE RECIPROCITY AGREEMENT**

35. The Nation has jurisdiction throughout the Creek Reservation over Five Tribe citizens when they hunt or fish within the Reservation, both as a matter of its inherent sovereignty and the inherent sovereignty of the other Five Tribes to enter inter-sovereign agreements consenting to and permitting their citizens to consent to the Nation's jurisdiction. *See* Ex. 1 art. 2 (B), (F)–(H).

36. The Nation's interests in exercising exclusive jurisdiction over Five Tribe citizens hunting and fishing within its treaty-guaranteed Reservation under the Five Tribe Reciprocity Agreement are substantial. The Nation entered the Agreement as an exercise of its inherent powers of self-government and territorial management to promote natural resource conservation within its Reservation through sovereign-to-sovereign cooperation among tribes with adjoining reservations, within which wildlife and other natural resources exist as part of ecological systems that transcend tribal boundaries. It also sought to enforce its fish and game laws with respect to Indians who are not Nation citizens but whom it has welcomed onto the Reservation to hunt and fish in compliance with those laws. And it sought to expand its own citizens' opportunities to

engage in the core cultural and subsistence activity of hunting and fishing within the Five Tribes' Indian country pursuant to tribal law.

37. The United States' interests are likewise substantial. "The Supreme Court has recognized 'that Congress is committed to a policy of supporting tribal self-government and self-determination.'" *Becker v. Ute Indian Tribe of Uintah and Ouray Rsrv.*, 11 F.4th 1140, 1149 (10th Cir. 2021) (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985)). The federal government, then, is "firmly committed to the goal of promoting tribal self-government," and "as a necessary implication of this broad federal commitment, … tribes have the power to manage the use of [their] territory and [fish and game] resources by both members and nonmembers[.]" *Mescalero*, 462 U.S. at 334–35.

38. The interests of Defendants in civilly and criminally regulating Indians hunting and fishing within the Creek Reservation under the Five Tribe Reciprocity Agreement are minimal. The Nation's fish and game laws substantively mirror those of Oklahoma, in terms of seasons, harvest limits, hunter safety protocols, and gear restrictions. Thus, all Five Tribe citizens lawfully hunting or fishing within the Creek Reservation under the Agreement are subject to restrictions on those activities that are materially identical to those applied to non-Indian hunters and fishers throughout Oklahoma. The imposition of state fish and game laws on such Indian hunters and fishers accordingly cannot be justified for resource conservation or public safety reasons.

**DEFENDANTS' ASSERTION OF JURISDICTION OVER INDIAN HUNTING AND FISHING WITHIN THE CREEK RESERVATION**

39. Under Defendant Free's direction, the ODWC has announced that Nation citizens and Five Tribe citizens lawfully hunting and fishing within the Creek Reservation and in compliance with Creek law will be subject to citation by the ODWC and prosecution by

11

Defendant Cochran if they do so without obtaining an ODWC-issued license and without complying with ODWC harvest reporting requirements.

40. Pursuant to that policy, ODWC game officers are coercing Nation citizens into compliance with ODWC fish and game licensing and harvest reporting requirements by threatening them with citation and prosecution if they fail to comply.

41. Nation citizens are responding to that coercion by complying with State regulatory requirements in lieu of the Nation's.

42. Under Defendant Free's direction, ODWC officials are also citing Five Tribe citizens lawfully hunting and fishing under the Five Tribe Reciprocity Agreement within areas of Oklahoma Indian country covered by that Agreement, and Defendant Cochran is prosecuting them.

43. Oklahoma Attorney General Drummond has informed Defendant Free that the ODWC's policy of applying state hunting and fishing laws to Indians within Indian country "finds no support in Oklahoma law," Ex. 2 at 3, and that it "contradicts well-established federal law recognizing tribal sovereignty over hunting and fishing by tribal members on reservation lands," Ex. 3 at PDF p. 2. The ODWC's application and enforcement of state hunting and fishing laws against Indians in Indian country, he has further informed Defendant Free,

> are not merely ill-advised—they are unlawful. They expose individual ODWC officers to personal liability under 42 U.S.C. § 1983. They waste limited law enforcement and prosecutorial resources on cases that cannot succeed. And they inflict significant harm on the State's government-to-government relationships with the Five Tribes—relationships that took years to rebuild and that benefit all Oklahomans.

*Id.*

44. The Attorney General directed that the ODWC policy be rescinded and that all pending citations to Indians under it be dismissed. *Id.* at PDF p. 3.

45. When Defendant Free declined to rescind the policy and dismiss the pending actions, Attorney General Drummond announced that "any further cases filed against members of Native American tribes for hunting on tribal land without a license will be taken over by the Attorney General's Office and promptly dismissed."[5]

46. After Attorney General Drummond dismissed several pending prosecutions against tribal citizens, the Governor of Oklahoma responded by appointing Defendant Cochran as a special prosecutor with orders to refile those cases and to continue with the enforcement and prosecution of Indians under state fish and game laws within Indian country regardless of the stated opinions of the Attorney General. Defendant Cochran has followed these orders. James, *supra* n.4.

47. On December 18, 2025, Attorney General Drummond addressed the issue in a formal opinion, which is binding on Defendants as a matter of Oklahoma law. In that formal opinion, Attorney General Drummond stated that as a matter of federal law, "it is clear that the state does not have authority to enforce the [ODWC] Wildlife Code on a [tribal citizen] who seeks to harvest game on the land the federal government promised to his or her tribe," Ex. 4 at 3, and that "[f]ederal law preempts application of the Oklahoma Wildlife Code to … [Five Tribe citizens] hunting on a Nation's reservation pursuant to the Five Tribes Wildlife Management Reciprocity Agreement," *id*. at 10. "[N]o state regulatory function or service justifies concurrent jurisdiction over Indians already subject to comprehensive tribal regulation." *Id*. at 8.

---

[5] Press Release, Okla. Att'y Gen., Drummond To Dismiss Native American Hunting Case (Oct. 30, 2025), https://oklahoma.gov/oag/news/newsroom/2025/october/drummond-to-dismiss-native-american-hunting-case.html.

## COUNT 1
### (Nation Citizens)

1. The Nation restates and incorporates by reference all preceding paragraphs and allegations.

2. The Creek Reservation is Indian country under 18 U.S.C. § 1151(a).

3. Within the Creek Reservation, the Nation has a sovereign right to regulate the hunting and fishing activities of its citizens free from regulation by the ODWC.

4. Defendants are prohibited under federal law from exercising and/or directing others to exercise civil regulatory or criminal jurisdiction over Nation citizens hunting and fishing within the Creek Reservation absent the assent of Congress.

5. Congress has not assented to state jurisdiction over Nation citizens hunting and fishing within the Creek Reservation.

6. Defendants continue to impose state fish and game laws, including criminal penalties, on Nation citizens for exercising their hunting and fishing rights within the Creek Reservation.

7. The actions of Defendants contravene federal law and irreparably harm the Nation's sovereignty and right of self-government and the self-government rights of Nation citizens.

## COUNT 2
### (Five Tribe Citizens)

8. The Nation restates and incorporates by reference all preceding paragraphs and allegations.

9. Within the Creek Reservation, the Nation has civil and criminal jurisdiction over Five Tribe citizens hunting and fishing pursuant to its inherent sovereignty and the Five Tribe Reciprocity Agreement.

10. The interests of the Nation and the United States in the Nation's exclusive ability to regulate the hunting and fishing activities of Five Tribe citizens within its Reservation are compelling and outweigh any state interests in concurrent regulation and the enforcement of state fish and game laws against such Indians.

11. Defendants are therefore preempted as a matter of federal law from enforcing state fish and game laws against Five Tribe citizens hunting and fishing within the Creek Reservation under the Five Tribe Reciprocity Agreement.

## PRAYER FOR RELIEF

WHEREFORE, the Nation respectfully requests that this Court:

A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that Defendants lack civil regulatory and criminal jurisdiction over Nation citizens hunting and fishing within the Creek Reservation and that their continued assertion of such jurisdiction constitutes an ongoing violation of federal law.

B. Preliminarily and permanently enjoin Defendants from exercising or directing others to exercise civil regulatory or criminal jurisdiction over Nation citizens hunting and fishing within the Creek Reservation.

C. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that Defendants lack civil regulatory and criminal jurisdiction over Five Tribe citizens hunting and fishing within the Creek Reservation under the Five Tribe Reciprocity Agreement and that

15

Defendants' continued assertion of such jurisdiction constitutes an ongoing violation of federal law.

  D. Permanently enjoin Defendants from exercising or directing others to exercise civil regulatory and criminal jurisdiction over Five Tribe citizens hunting and fishing within the Creek Reservation under the Five Tribe Reciprocity Agreement.

  E. Award the Nation its reasonable attorney fees and costs.

  F. Award the Nation such other relief as the Court deems just and appropriate.

Dated: January 5, 2026       Respectfully submitted,

                */s/ Riyaz A. Kanji*

| | |
|---|---|
| Geraldine Wisner | Riyaz A. Kanji |
| Deputy Attorney General | David A. Giampetroni |
| MUSCOGEE (CREEK) NATION | Anjana R. Joshi |
| P.O. Box 580 | KANJI & KATZEN, P.L.L.C. |
| Okmulgee, OK 74447 | P.O. Box 3971 |
| | Ann Arbor, MI 48106 |
| O. Joseph Williams | (734) 769-5400 |
| O. JOSEPH WILLIAMS LAW OFFICE, PLLC | rkanji@kanjikatzen.com |
| The McCulloch Building | |
| 114 N. Grand Avenue, Suite 520 | Philip H. Tinker |
| P.O. Box 1131 | KANJI & KATZEN, P.L.L.C. |
| Okmulgee, OK 74447 | 12 N. Cheyenne Avenue, Suite 220 |
| | Tulsa, OK 74103 |

*Counsel for Muscogee (Creek) Nation*

## CERTIFICATE OF SERVICE

    I certify that on January 5, 2026, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                                    /s/ *Riyaz A. Kanji*
                                    Riyaz A. Kanji