# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MUSCOGEE (CREEK) NATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-CV-0003-CVE-JFJ** |
| | ) | |
| **WADE FREE, in his official capacity as** | ) | |
| **Director of the Oklahoma Department of** | ) | |
| **Wildlife Conservation and RUSSELL** | ) | |
| **COCHRAN, in his official capacity as** | ) | |
| **special prosecutor appointed by the** | ) | |
| **Governor,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Joint Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 30). Defendants argue that the Court lacks jurisdiction over this case on various grounds, including sovereign immunity and lack of standing. Defendants also argue that the case should be dismissed due to plaintiff's unreasonable delay in bringing its claims. Plaintiff responds that state officials do not have sovereign immunity from claims seeking only prospective injunctive and declaratory relief, and plaintiff asserts that it promptly brought this after the state changed its policy in October 2025 and required tribal members to obtain state hunting and fishing licenses.

## I.

The Muscogee (Creek) Nation (MCN) filed this case seeking declaratory and injunctive relief prohibiting defendants from enforcing state wildlife laws on the Creek Reservation. Defendant Wade Free is the director of the Oklahoma Department of Wildlife Conservation (ODWC) and, October 9, 2025, Free announced that "state fish and wildlife laws apply to everyone in Oklahoma." Dkt. # 2, at 3, 7. Pursuant to this policy, Free directed game wardens to "issue citations to anyone

in violation of the state's fish and game laws, regardless of tribal citizenship." Id. at 4.  The attorney general of Oklahoma, Gentner Drummond, sent Free a letter clarifying Drummond's position that federal law prohibited the state of Oklahoma from enforcing its wildlife laws on reservation lands. Id.  Free has chosen to disregard Drummond's legal advice and the MCN alleges that ODWC officials have threatened to prosecute MCN citizens who hunt and fish on tribal lands without a state license.  Id.  The MCN alleges that tribal citizens have been coerced into purchasing state hunting and fishing licenses to avoid prosecution for failing to comply with state law, even though the state attorney general has acknowledged that the state lacks the authority to enforce its hunting and fishing laws in Indian country.  Id. at 13.

ODWC officials initiated prosecutions against Indians who were hunting and fishing on tribal lands pursuant to a reciprocity agreement among the MCN, the Cherokee Nation, the Chickasaw Nation, the Choctaw Nation of Oklahoma, and the Seminole Nation of Oklahoma (the Five Tribes). Drummond directed Free to dismiss all pending prosecutions against Indians for alleged hunting and fishing violations occurring in Indian country.  Id. at 5.  Russell Cochran is a special prosecutor appointed by the governor of Oklahoma, Kevin Stitt, specifically for the purpose of prosecuting state citations and criminal misdemeanor charges for violations of Oklahoma's wildlife laws.  Id. at 8. Cochran receives referrals from ODWC wardens for alleged violations of state hunting and fishing laws committed by Indians, and plaintiff alleges that Cochran is actively prosecuting Indians who hunt and fish in Indian country pursuant to the Five Tribes reciprocity agreement.  Id.  The MCN does not allege that there are any pending prosecutions of its members or of any Indian who engaged in hunting and fishing within the Creek Reservation.

The MCN has alleged two claims seeking declaratory and injunctive relief to clarify its sovereign rights to regulate hunting and fishing within its reservation. First, the MCN contends that it has the exclusive sovereign right to regulate the hunting and fishing activities of its citizens within the Creek Reservation. Id. at 15. The MCN states that its citizens are subject to penalties under Oklahoma law, including criminal laws, unless they consent to state jurisdiction over hunting and fishing activities on the Creek Reservation. Id. Second, the MCN argues that it has exclusive jurisdiction to regulate citizens of the Five Tribes who hunt and fish on the Creek Reservation as a matter of federal law. Id. at 16. The MCN seeks a declaratory judgment that the state of Oklahoma lacks "civil regulatory and criminal jurisdiction" over citizens of the MCN and the Five Tribes who hunt and fish on the Creek Reservation, and the MCN also asks the Court to declare that defendants' assertion of such jurisdiction is a violation of federal law. The MCN also asks the Court to enjoin defendants from "exercising or directing others to exercise civil regulatory and criminal jurisdiction" over MCN and Five Nations citizens who hunt and fish on the Creek Reservation.

## II.

Defendants have moved to dismiss the case on the grounds of sovereign immunity, laches, and lack of standing, and the issues of sovereign immunity and standing concern the subject matter jurisdiction of the Court to hear this case. Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Where a motion to dismiss is based on a facial attack, as here,

courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants contend that they have sovereign immunity from suit because, under Ex Parte Young, 209 U.S. 123 (1908), plaintiff seeks retrospective relief that would essentially award it ownership over state lands, and they argue that plaintiff delayed for almost one hundred years in challenging the state's right to regulate hunting and fishing on lands that have long since lost their tribal status. Dkt. # 30, at 14-23. Defendants ask the Court to dismiss claims that plaintiff has asserted on behalf of non-member Indians, and Cochran argues that he has prosecutorial immunity from suit. Id. at 19, 24-27. Finally, defendants propose a series of limitations to the scope of plaintiff's claims and argue that plaintiff has failed to state claim upon which relief can be granted. Id. at 27-29.

### A.

Defendants argue that they have sovereign immunity from plaintiff's claims, because plaintiff's claims do not seek prospective declaratory or injunctive relief and are barred by Ex Parte Young. Defendants acknowledge that plaintiff claims to be seeking prospective relief, but defendants analogize plaintiff's claim to the one in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), and argue that the relief sought by plaintiff is similar to a retrospective quiet title action which would be barred by the doctrine of sovereign immunity. Cochran also argues that he has prosecutorial immunity for actions taken in his role as a special prosecutor enforcing the wildlife laws of Oklahoma. Id. at 19. Plaintiff responds that the Court should apply a "straightforward" inquiry to determine whether plaintiff seeks prospective relief only and, under a straightforward inquiry, the Court should find that plaintiff's claims are not barred by sovereign immunity. Dkt. #

35, at 10-11. Plaintiff also argue that prosecutorial immunity does not apply to claims against a state actor in his official capacity for declaratory or injunctive relief. Id. at 12.

Under the Eleventh Amendment to the United States Constitution, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States . . . ." U.S. CONST. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001). However, the Supreme Court recognized an important limitation on a state's sovereign immunity in Ex Parte Young, which is that sovereign immunity does not bar claims against a state official when the relief sought by the plaintiff would simply prevent the defendant from prospectively violating federal law. Ex Parte Young, 209 U.S. at 159-60. "In determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (quoting Coeur d'Alend Tribe of Idaho, 521 U.S. at 296)).

The Tenth Circuit formerly applied a four part test to determine whether Ex Parte Young applies and permits a suit against state officials to proceed:

> First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interest."

6

Timpanogos Tribe v. Conway, 286 F.3d 1195, 1205 (10th Cir. 2002).  The Tenth Circuit has

clarified that the Supreme Court's decision in Verizon Maryland abrogated the fourth step of the

analysis, and courts no longer weigh a "special sovereignty interest" as part of the Ex Parte Young

analysis.  Hill v. Kemp, 478 F.3d 1236, 1259 (10th Cir. 2007).  The Tenth Circuit has construed

Verizon Maryland as a direction "to proceed immediately in every case to the 'straightforward [or

so one might hope] inquiry' whether the relief requested is 'properly' characterized as prospective

or is indeed the functional equivalent of impermissible retrospective relief."  Id. (quoting Verizon

Maryland, 535 U.S. at 645).

The first and second parts of the test are not in dispute.  Plaintiff has named individual state

actors as defendants, and defendants have not challenged that plaintiff has named appropriate parties

under Ex Parte Young.  As to the second part, plaintiff has clearly alleged that defendants have

violated plaintiff's inherent sovereign authority and federal law by attempting to enforce state

wildlife laws on tribal land against Indians.  Defendants dispute whether the relief sought by plaintiff

actually constitutes prospective relief, and they contend that plaintiff is seeking a judgment akin to

a quiet title action.

Defendants rely on Coeur d'Alene for that proposition a claim seeking the functional

equivalent of a quiet title declaration, even if framed as prospective relief, does not fall within the

Ex Parte Young exception to a state's sovereign immunity.  Dkt. # 30, at 16-17.  The parties in Coeur

d'Alene disputed the ownership of the "submerged lands and bed of Lake Coeur d'Alene and of the

various navigable rivers and streams that form part of its water system," and the tribe claimed

beneficial ownership of these waterways within the boundaries of its reservation."  Coeur d'Alene,

521 U.S. at 264-65.  The Supreme Court noted that an allegation of an ongoing violation of federal

law is ordinarily sufficient to invoke Ex Parte Young, but it found the nature of the tribe's allegations "unusual" in that the tribe's case was the "functional equivalent of a quiet title action which implicates special sovereignty interests." Id. at 281.  In fact, the relief sought by the tribe went beyond a simple quiet title action, and the tribe sought a ruling that the disputed land was wholly outside of the regulatory jurisdiction of the state. Id. at 282.  The Supreme Court also relied on the historical significance of a state's authority over navigable waterways within its boundaries, which include submerged waterways, and a ruling in favor of the tribe would have affected Idaho's interests "in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." Id. at 287.

Defendants' argument for sovereign immunity is simultaneously based on a dramatic overstatement of the scope of plaintiff's claims and an expansive reading of Coeur d'Alene.  Plaintiff seeks declaratory and injunctive relief confirming that plaintiff and its members have treaty rights and the inherent sovereign authority to hunt, fish, and gather on its reservation without interference or regulation by the state of Oklahoma, and plaintiff also argues that it has the right to enter reciprocity agreements with other tribes to regulate the hunting and fishing activities of member and non-member Indians within the boundaries of its reservations.  Plaintiff is not seeking to usurp state authority to regulate the activities of non-Indians on tribal land and, even if plaintiff is wholly successful on its claims, the state of Oklahoma will still maintain substantial authority to regulate hunting and fishing on tribal lands.  This case bears no obvious similarities to Coeur d'Alene, as plaintiff is not seeking to wholly preempt the state's authority to regulate hunting and fishing within the boundaries of their reservations.  Instead, plaintiff seeks a ruling that the state of Oklahoma should prospectively be prohibited from enforcing state hunting and fishing law against Indians on

tribal land.  In Coeur d' Alene, the tribe sought to claim exclusive authority over waterways within the state of Idaho to the total exclusion of state authority.  Plaintiff's claims in this case are substantially more limited and are not the functional equivalent of a quiet title action.  Under a straightforward inquiry, the Court finds that plaintiff's claims are limited to prospective declaratory and injunctive relief that is not analogous to an award of retrospective money damages or an improper usurpation of state authority over its own lands.  Plaintiff has shown that its claims fall within the Ex Parte Young exception to the state of Oklahoma's sovereign immunity, and defendants' request to dismiss the case on the basis of sovereign immunity is denied.

Cochran also argues that he has prosecutorial immunity from suit, because plaintiff has sued him for actions taken in his role as special prosecutor for the state of Oklahoma.  Dkt. # 30, at 19. Tenth Circuit precedent is clear that prosecutors have immunity from claims challenging their "decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court."  Nielander v. Bd. of County Comm'rs of County of Republic, Kansas, 582 F.3d 1155, 1164 (10th Cir. 2009).  However, prosecutorial immunity applies only to individual capacity claims seeking money damages for the past actions of a prosecutor, and prosecutorial immunity does not bar prospective official capacity claims seeking declaratory or injunctive relief against a prosecutor.  Chilcoat v. San Juan County, 41 F.4th 1196, 1213-14 (10th Cir. 2022); Martinez v. Winner, 771 F.2d 424, 438 (10th Cir. 1985).  Plaintiff's claims against Cochran are official capacity claims, and the Court has determined that the claims seek prospective declaratory and injunctive relief.  Cochran is not entitled to prosecutorial immunity from plaintiff's claims.

**B.**

Defendants argue that plaintiff unreasonably delayed in asserting its rights to regulate hunting and fishing within the boundaries of its reservation, and defendants claim that plaintiff has acquiesced to state authority over these matters.  Dkt. # 30, at 19-22.  Defendants rely on City of Sherrill, New York v. Oneida Indian Nation of New York, 544 U.S. 197 (2005), for the proposition that an Indian tribe's delay in asserting its rights to property can support dismissal on the ground of the equitable defense of laches.  Id. at 20.  Plaintiff responds that McGirt[1] halted the state of Oklahoma's long-standing practice of illegally asserting criminal jurisdiction in Indian country, and plaintiff has not delayed in asserting its treaty and inherent rights based on the Supreme Court's ruling that plaintiff's reservation was not disestablished.  Dkt. # 35, at 15-17.  Plaintiff  also argues that Sherrill has no application to this case and defendants have not shown that the requirements for the equitable defense of laches have been satisfied.  Id. at 12-14..

Equitable principles require that a party exercise diligence in protecting its rights, and the defense of laches may bar a claim when "a party, having knowledge of the relevant facts, acquiesces for an unreasonable length of time in the assertion of a right adverse to his own."  Jicarilla Apache Tribe v Andrus, 687 F.2d 1324, 1338 (10th Cir. 1982).  The defense of laches requires that the party asserting the defense show that the party bringing a claim failed to diligently assert the claim and that the party asserting the defense has been prejudiced because of the delay.  State of Kansas v. State of Colorado, 514 U.S. 673, 687 (1995).  The Tenth Circuit has explained that courts apply the doctrine of laches with flexibility, and a court should focus on the inequity of allowing a claim to proceed rather than the application of mechanical rules.  Biodiversity Conservation Alliance v. Jiron, 762

---

[1]    McGirt v. Oklahoma, 591 U.S. 894 (2020).

F.3d 1036, 1091 (10th Cir. 2014).  Laches is an equitable defense, and "the existence of laches 'is a question primarily addressed to the discretion of the trial court.'" Mile High Indus. v. Cohen, 222 F.3d 845, 857 (10th Cir. 2000).

Plaintiff has alleged that it has long exercised regulatory authority over hunting, fishing, and gathering by Indians on its reservations, and plaintiff has executed a reciprocity agreement allowing each of the five tribes to enforce its laws against members of other signatory tribes who engage in hunting, fishing, and gathering on its lands.  Dkt. # 2, at 7, 11-12.  Plaintiff states that it has tailored its regulations to mirror the state of Oklahoma's bag limits and seasons, and the state has not identified any conservation concerns caused by the joint exercise of jurisdiction for hunting and fishing on tribal lands.  Id. at 7. Plaintiff contends that it was enforcing tribal fishing and hunting laws on its reservation without interference from the state until October 9, 2025, when a dispute arose among state officials about whether the state should be enforcing its own laws against Indians who hunt and fish within the boundaries of a reservation.  Id. at 3.  Certain state officials have relied on the Oklahoma Supreme Court's decision in Stroble v. Oklahoma Tax Commission, 588 P.3d 179 (Okla. 2025), for the proposition that McGirt applies only to the narrow issue of criminal jurisdiction under the Major Crimes Act, 18 U.S.C. 1151 (MCA), even though the Attorney General of Oklahoma has taken the position that federal law bars the application of state wildlife laws and regulations against Indians who hunt and fish within plaintiff's reservations.  Dkt. # 2-3; Dkt. # 2-4. In other words, there is a live dispute even among state officials concerning the rights of Indians to hunt and fish on tribal lands, and this lawsuit was brought immediately after this dispute arose.

Defendants have not shown that plaintiff has delayed in bringing this case or that defendants have been prejudiced by the alleged delay.  Plaintiff brought this case promptly after it became clear

that state officials were seeking to enforce state wildlife laws against Indians within their reservations, and defendants' arguments ignore the factual allegations of plaintiff's complaint and the live dispute amongst state officials concerning the viability of plaintiff's claims. Defendants also ignore the effect of the McGirt decision and recent decisions by the Oklahoma Supreme Court concerning the impact of McGirt on the state's regulatory authority on Indian lands. Defendants' contention that plaintiff has unreasonably delayed in bringing this case is meritless. Defendants have also made no attempt to show that timing of this litigation has in any way prejudiced the state in its ability to enforce its hunting and fishing laws, even if the scope of the state's authority within the boundaries of plaintiff's reservations is disputed. Defendants still have the authority to enforce hunting and fishing laws against non-Indians throughout the state of Oklahoma, and plaintiff has not questioned the state's power to enforce these same laws against Indians outside of their reservations.

Defendants argue that Sherrill bars plaintiff's claims to regulate hunting and fishing within the historical boundaries of its reservation, because plaintiff's efforts to regulate these activities over lands it no longer controls is equivalent to a belated attempt to regain control over lands that was prohibited by Sherill. Dkt. # 47, at 23. In Sherrill, the Oneida Indian Nation (OIN) entered a treaty in 1788 with the state of New York under which the OIN sold most of its land to the state, but the (OIN) successively sold more land to the state until the OIN possessed only 32 acres by 1920. City of Sherrill, 544 U.S. at 203-07. In 1997 and 1998, the OIN began to repurchase some of the land within its former reservation in open market transactions, and the OIN filed a lawsuit seeking declaratory and injunctive relief that it had no obligation to pay state and local taxes for the recently purchased lands within the boundaries of its former reservation. Id. at 211-14. The Supreme Court discussed several legal doctrines concerning the effect of the passage of time on legal rights,

including laches, acquiescence, and impossibility, and determined that the OIN's long acquiescence to state authority over these lands barred restoration of the OIN's former sovereignty over the lands. Id. at 220-21.

Plaintiff is not attempting to assert total sovereignty over lands within the historical boundaries of its reservation, but it is seeking to confirm its inherent authority and treaty rights to regulate hunting and fishing over other Indians on these lands. Granting the relief sought by plaintiff would minimally infringe on the state's authority to regulate hunting and fishing on certain lands, but plaintiff has asserted colorable claims concerning the division of regulatory authority within the boundaries of plaintiff's reservations. This case is nothing like Sherrill in which an Indian tribe attempted to wholly restore tribal authority over lands that had been in possession of a state for almost 200 years. Plaintiff is not seeking to wholly exclude state authority over its own citizens on any land within the boundaries of the state of Oklahoma, but it is relying on the Supreme Court's relatively recent decision in McGirt to assert regulatory authority over its own citizens and other Indians on tribal lands. The Court does not find that plaintiff has delayed in bringing this action to clarify the division of state and tribal authority over hunting and fishing within the historical boundaries of plaintiff's reservation, and defendants' request to dismiss the case based on the equitable defense of laches is denied.

### C.

Defendants argue that plaintiff lacks standing to assert claims on behalf of non-member Indians or "Five Tribe citizens" who seek to hunt and fish on the Creek Reservation, and Cochran also argues that plaintiff specifically lacks standing to bring claims against him, as he has not prosecuted any cases arising out of activities occurring on the Creek Reservation. Dkt. # 30, at 25.

Plaintiff responds that it has not asserted any claims falling within either category identified in the motion to dismiss, and plaintiff clarifies that it is bringing claims on its own behalf to determine the scope of its authority over hunting and fishing on its lands.  Dkt. # 35, at 17-18.

Article III of the United States Constitution limits federal courts to the adjudication of cases or controversies.  U.S. CONST. art. III, § 2, cl. 1.  "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate."  Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004).  "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision."  Kane CountyUnited States (Kane III), 928 F.3d 877, 888 (10th Cir. 2019).  The standing requirement ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).  The primary focus for any analysis of standing under Article III "is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury."  Morgan v. McCotter, 365 F.3d 882, 888 (10th Cir. 2004).  Further, while "[t]he plaintiff must show that a favorable judgment will relieve a discrete injury, [] it need not relieve his or her every injury."  Nova Health Sys. v. Gandy, 416 F.3d 1149, 1158 (10th Cir. 2005).  The party invoking the jurisdiction of a federal court has the burden to establish Article III standing.  New England Health Care Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

The Court has no difficulty in concluding that plaintiff has standing to bring the claims asserted in its complaint. Plaintiff has alleged that it has been injured by defendants' efforts to enforce state wildlife laws against Indians within its reservation, and the injury is based on the harm to plaintiff's sovereignty, rather than any harm allegedly suffered by the individual member or non-member Indians who seek to hunt and fish on tribal lands. Dkt. # 2, at 2 (complaint alleges that plaintiff "seeks declaratory and injunctive relief to vindicate the Nation's authority to regulate, free of interference by Defendants, the citizens of the Cherokee Nation, the Chickasaw Nation, the Choctaw Nation of Oklahoma, and the Seminole Nation of Oklahoma . . . lawfully hunting and fishing within the Creek Reservation"). Defendants' infringement on plaintiff's tribal sovereignty plainly constitutes an injury in fact that is sufficiently concrete and particularized to establish standing. Ute Indian Trie of the Uintah and Ouray Reservation v. Utah, 790 F.3d 1000, 1005 (10th Cir. 2015); Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1255 (10th Cir. 2006). Defendants seem to be arguing that there is no legal distinction between a non-member Indian and a non-Indian, and they contend that plaintiff has no right to assert claims on behalf of a person merely because he is an Indian who intends to hunt or fish on the Creek Reservation. Dkt. # 30, at 25. This argument ignores the actual allegations of plaintiff's complaint and restates plaintiff's claims as if they are being asserted by non-parties. The complaint references the rights of member and non-member Indians to hunt and fish on tribal lands, but these allegations are framed in terms of the plaintiff's rights to regulate these activities on the Creek Reservation based on the inherent and treaty rights of the Creek Nation. Plaintiff alleges that defendants have infringed on plaintiff's sovereign right to regulate hunting and fishing by Indians on plaintiff's reservation, whether the Indian is a member

or non-member, and the Court can grant the requested relief without considering the claims of individual Indians or non-plaintiff tribes.

Cochran separately argues that plaintiff lacks standing to bring claims against him, because he has not prosecuted any Indian for activities occurring on the Creek Reservation and the mere fear of prosecution is not sufficient to satisfy the injury in fact requirement for standing. Dkt. # 30, at 26. Cochran argues that plaintiff admits that its members claim to be complying with state law while hunting and fishing on non-trust fee lands, and there is no credible risk of prosecution based on plaintiff's assertion that tribal members are complying with state law. Id. Cochran's arguments merely highlights the injury actively being suffered by the tribe based on the threat of prosecution for hunting and fishing on tribal lands. The complaint alleges that the Creek Nation has the sole and exclusive right to regulate the hunting and fishing activities of Indians on the Creek Reservation, and threatened prosecutions intended to coerce compliance with state licensing requirements constitute an active and imminent threat to tribal sovereignty. Dkt. # 2, at 5-7; Dkt. # 35, at 20. Plaintiff alleges that Cochran's actions "are coercing Nation citizens into compliance with ODWC fish and game licensing . . . requirements by threatening them with citation and prosecution if they fail to comply," and the state is unlawfully exercising jurisdiction over hunting and fishing on tribal lands. Dkt. # 2, at 13. Plaintiff's allegations satisfy the requirement to allege that it has suffered a concrete injury caused by Cochran's actions, and plaintiff has standing to sue both defendants named in the complaint.

**D.**

Defendants ask the Court to dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(6) based on their prior arguments and additional proposed limitations to the scope of plaintiff's claims.

Defendants ask the Court to assume that the state of Oklahoma does not enforce its wildlife laws against Indians who hunt and fish on Indian allotments or trust land, that the state does not require land owners to obtain a license to hunt and fish on their own lands, and that Indians are treated just like any other Oklahoma resident outside of trust land. Dkt. # 30, at 27. Based on these assertions, defendants contend that the Court should consider only whether "the Nation is entitled to prospective injunctive relief that would create a system of concurrent, tribal citizenship-based regulation over hunting and fishing on fee lands within the Nation's Indian country." Id. at 28. The Court has already rejected each of the arguments raised by defendants in their motion to dismiss, and the Court will not dismiss plaintiff's claims based on defendants' proposed revisions to the scope of plaintiff's claims. Plaintiff has asserted colorable claims that it has treaty rights and the inherent authority to regulate hunting and fishing on its lands, and the parties have a live dispute concerning the scope of the lands over which plaintiff can exert authority over Indians without state regulation of the same activities. Defendants are essentially asking to resolve the merits of the case in their favor based on a narrow view of plaintiff's claims supported by allegations not found in plaintiff's complaint. Defendants have made their position clear that they dispute plaintiff's claim that McGirt expanded the civil jurisdiction of Indian tribes to all lands within the historical boundaries of their reservations, but plaintiff has the right to litigate this claim to a conclusion based on the Court's determination that it has subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 30) is **denied**.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report concerning a proposed schedule for final resolution of plaintiff's claims no later than **June 25, 2026**.

**DATED** this 11th day of June, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE